FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 DEC -9  PM 4:08

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JAMES "TROY" DURHAM,                     *

    **Plaintiff**                                        *

    **v.**                                              *            **CIVIL NO.  JKB-13-1350**

CHARLES W. RAPP *et al.*,                    *

    **Defendants**                                   *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM

This case was filed May 7, 2013, by Plaintiff James "Troy" Durham against the members of the Maryland Police Training Commission ("MPTC"), MPTC's executive director, Charles W. Rapp, and MPTC's deputy director, Albert L. Liebno, Jr., in their personal capacities.[1] (Compl., ECF No. 1.)  An amended complaint was filed March 25, 2014 (Am. Compl., ECF No. 46), and all Defendants have moved to dismiss it (ECF Nos. 47 & 50).[2]  The motions have been briefed (ECF Nos. 53, 54, & 55), and no hearing is necessary, Local Rule 105.6 (D. Md. 2014).  Defendant Stephen E. Vogt's motion will be denied.  The motion of the other defendants will be granted in part and denied in part.

---

[1] The named defendants besides Rapp and Liebno are either MPTC members or their designees:  Colonel Marcus L. Brown, John A. Bartlett, Jr., Sheriff Michael A. Lewis, Stephen E. Vogt, Chief William McMahon, Lt. Robin E. Roberts, Dr. Charles Wellford, Dr. Anthony Batts, Joezette Pope, Chief Douglas K. Holland, Douglas F. Gansler, Stuart M. Nathan, Gary D. Maynard, Chief Larry Brownlee, and Chief Charles H. Hinnant.

[2] The Court stayed proceedings in this case and a related case, JKB-12-2757, for several months while the parties engaged in settlement negotiations, which have recently concluded unsuccessfully.

## *I. Standard of Dismissal for Failure to State a Claim*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## *II. Allegations of the Complaint*

Durham alleges the MPTC commissioners violated his right to due process under the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights. (Am. Compl. Count I.) Durham also alleges that Defendants Rapp and Liebno retaliated against him for exercising his First Amendment right to petition the government for redress of his grievances as to matters of public concern and violated his Maryland state law right for the same under its Declaration of Rights, Article 40. (*Id.* Count II.) Durham additionally alleges the MPTC commissioners retaliated against him for exercising his

2

petition rights under the First Amendment.  (*Id.* Count III.)  Durham's federal causes of action are filed pursuant to 42 U.S.C. § 1983.

As background for this case, the Court notes two related cases in this Court.  The first is *Durham v. Jones*, Civ. No. WMN-10-2534 ("*Durham I*"), in which a jury found Sheriff Robert Jones of Somerset County liable in his personal capacity for First Amendment retaliation against Durham when Jones terminated him after Durham went to the press and public officials about concerns relating to improper changing of police reports and pressure to bring charges against an arrestee.  The jury's verdict on May 18, 2012, of $412,000 in economic losses and $700,000 in noneconomic losses was affirmed by the Fourth Circuit, 737 F.3d 291 (4th Cir. 2013).

The second case is *Durham v. Somerset County, Maryland et al.*, Civ. No. JKB-12-2757 ("*Durham III*").[3]  In that case, Durham has sued Somerset County, the Somerset County Commissioners in their personal and official capacities, the Somerset County Attorney in his personal capacity, Deputy Sheriff Ronnie Howard in his personal and official capacities, and Sheriff Jones in his personal capacity from August 2, 2012, to the present as well as in his official capacity for events occurring September 14, 2009, through the present.  A second amended complaint has been recently filed in *Durham III*, which is still in the discovery phase. That suit seeks to hold those defendants liable for Durham's termination and for acts since then relating to his reinstatement.

The focus of the instant suit is on Defendants' decision not to waive recertification of Durham's police powers but to require him to go through the certification process again after his termination had been reversed by the Maryland Court of Special Appeals and he had been reinstated in the Somerset County Sheriff's Office ("SCSO").  Durham alleges the original revocation of his certification, the "refus[al] to vacate [Defendants'] prior order revoking the

---

[3] Durham's successful state court appeal of his termination is referred to by Plaintiff as *Durham II*.

Plaintiff's law enforcement powers," and the decision to require him to be recertified denied him procedural due process and amounted to retaliation against him for filing *Durham I*, *Durham II*, and this case. (Am. Compl. ¶¶ 12-13.)

Specifically, Durham alleges that his police powers were automatically revoked on September 16, 2009, because of his termination by Sheriff Jones. (*Id.* ¶ 14.) He says he was not afforded a hearing before this revocation occurred. (*Id.* ¶ 15.) Durham alleges "Jones advised the MPTC to place a 'red flag' on Plaintiff Durham's MPTC file" and that this amounted to a request that he be "blacklisted" from ever again being certified as a police officer. (*Id.* ¶ 16.) Durham alleges that a letter from Rapp on February 3, 2011, stated that "most likely" Durham would not be granted certification "until the Court cases (including any and all appeals) have been resolved." (Am. Compl. ¶ 17; Compl., Ex. 3.[4]) This letter was written after *Durham I* and *Durham II* were filed. (Am. Compl. ¶ 19.)

Durham further alleges that the MPTC learned he had prevailed in *Durham I* and *Durham II* but "refused to reinstate his police certification without Plaintiff Durham having to undergo extensive background, medical, psychological and lie detector testing, which they forced on Plaintiff but not all other law enforcement officers who have 'gaps' in their actual employment." (*Id.* ¶ 20.) After the termination had been judicially reversed, "the MPTC Defendants proceeded to deny one waiver request after another relating to the Plaintiff." (*Id.* ¶ 21.) "When they voted to deny a waiver request in August 2013, each MPTC Defendant was plainly aware that this lawsuit had been filed against them. The August 2013 denial was done simply to retaliate against the Plaintiff, and harm him in his profession." (*Id.* ¶ 23.) Durham

---

[4] The exhibits to which Durham's amended complaint refers were not attached to the amended complaint but were attached to the original complaint (ECF No. 1).

went through the certification process and was recertified in December 2013. (*Id.* ¶ 24.)
Additional allegations will be discussed in the Court's analysis.

### III. Analysis

#### A. Defendant Vogt's Status as an FBI Agent

Defendant Stephen E. Vogt is the Special Agent in Charge of the Baltimore office of the
Federal Bureau of Investigation ("FBI"). (Vogt's Mot. Supp. Mem. 11.) He argues he "should
be dismissed with prejudice because, as a federal official, 42 U.S.C. § 1983 and the Maryland
Declaration of Rights do not apply to him." (*Id.* Supp. Mem. 1.)

The Court disagrees with Vogt's proposition that his status as a federal official or
employee bars suit against him under 42 U.S.C. § 1983 and the Maryland Declaration of Rights.
Section 1983 provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law . . . .

Pertinent to this suit, every person who, under color of Maryland state law, caused a deprivation
of Durham's federal constitutional right of due process and right not to be retaliated against for
exercising First Amendment rights shall be liable to him for injuries he suffered from the
violation of his rights. The statute does not provide an exemption for federal officials acting
under color of state law. Vogt cites various cases from other judges of this Court indicating that
§ 1983 has no application to the federal government or its officers and that actions against them
must be brought under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). *See, e.g.,*
*Chiang v. Lappin*, Civ. No. RDB-07-1017, 2008 WL 2945434 (D. Md. July 24, 2008); *Curtis v.*
*Pracht*, 202 F. Supp. 2d 406, 418 (D. Md. 2002); *Tinch v. United States*, 189 F. Supp. 2d 313,

318-19 (D. Md. 2002). Those cases are all distinguishable because the claims made in them were against federal officers or employees acting under federal law, not state law. *See Chin v. Wilhelm*, 291 F. Supp. 2d 400, 404 (D. Md. 2003) (federal employee acting under color of federal law, rather than state law, not subject to suit under § 1983).

As to what constitutes the proper nexus to state law under § 1983, the Supreme Court has stated, "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (citations omitted). As the Sixth Circuit has noted, "Because federal officials typically act under color of *federal* law, they are rarely subject to liability under § 1983." *Strickland v. Shalala*, 123 F.3d 863, 866 (6th Cir. 1997). However, the *Strickland* opinion went on to say, "Nevertheless, we have joined a majority of circuits in recognizing that a federal official can act 'under color of state law' in certain circumstances." *Id.* (citing decisions from Second, Third, Fifth, Eighth, Ninth, and D.C. Circuits); *accord Tobey v. Napolitano*, 808 F. Supp. 2d 830, 846 (E.D. Va. 2011), *aff'd sub nom. Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013) (not addressing question as to whether federal official can act under color of state law). *See also Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003) ("Although an action brought pursuant to § 1983 cannot lie against federal officers acting under color of federal law, it is assumed that a § 1983 action can lie against federal employees—as it can against private individuals—if they conspire or act in concert with state officials to deprive a person of her civil rights under color of state law." (Citations omitted.)).

The Court concludes that Durham is not barred from suing Vogt under § 1983 simply because Vogt is an FBI agent. The only question is whether Vogt was acting under color of state

6

law when he was serving as a commissioner of the MPTC.  Since it was Maryland state law that created the MPTC and bestowed upon it its powers and duties including those exercised by Vogt, it can be fairly said that Vogt must be regarded as a state actor as to the circumstances presented in this lawsuit.   He has cited no federal law that required him to serve as an MPTC commissioner.  Thus, he was acting under color of state law. For that reason, he is not subject to suit under *Bivens* because he was not acting under color of federal law.

Similarly, Vogt is subject to suit under the Maryland Declaration of Rights ("MDR") for actions he took as an MPTC commissioner.  The cases he relies upon for his claim of immunity from suit under the MDR are all easily distinguishable.  The first, *Chin*, found the defendant immune from suit based on the Federal Tort Claims Act, 291 F. Supp. 2d at 405, which is not a part of the instant case.  *See also Cash v. United States*, Civ. No. WDQ–12–0563, 2012 WL 6201123, at *6 (D. Md. Dec. 11, 2012) (same).  The United States Government has never filed a certification that Vogt was acting within the scope of his federal employment for the events in question here and has not asked to be substituted for Vogt in this suit.  Consequently, FTCA immunity does not apply.  The *Curtis* case was only brought against the federal defendants in their official capacities; they were not sued in their personal capacities, as Vogt is in this case. *Tinch* was also an official capacity suit.  An action against a federal defendant in his official capacity is an action against the federal government.  *See Kentucky v. Graham*, 473 U.S. 159, 165-67 & n.14 (1985).   The federal government is not subject to suit under the Maryland Declaration of Rights unless it has waived its sovereign immunity.  *See Curtis*, 202 F. Supp. 2d at 418-19.  Thus, if this suit were against Vogt in his official capacity as an FBI agent, then he would be immune from suit. But Vogt, in his personal capacity, is not immune to suit under the MDR.

**B.  *Sufficiency of Claim of Denial of Procedural Due Process – Count I***

Preliminarily, the Court notes that Vogt's separate motion to dismiss asserts that the test of Durham's due process claim is whether Defendants' actions shocked the conscience.  (Vogt. Mot. Supp. Mem. 8.)  Vogt has mistakenly referred to the standard for judging a claim of denial of substantive due process.  Instead, Durham is contending he was denied procedural due process.  The standard for the latter requires a showing that Durham had a property interest of which he was deprived by Defendants without due process of law.  *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005) (distinguishing between procedural and substantive due process standards).  Durham's claim of denial of due process under Maryland state law is analyzed identically to his federal due process claim.  *Pitsenberger v. Pitsenberger*, 410 A.2d 1052, 1056 (Md. 1980) ("Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment of the United States Constitution have the same meaning, and . . . Supreme Court interpretations of the Fourteenth Amendment function as authority for interpretation of Article 24.").

Defendants have unpersuasively argued that Durham did not have a protectible property interest in the certification of his police powers.  The Tenth Circuit has explicitly so held, *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1150 (10th Cir. 2001), and that holding is consistent with Supreme Court precedent finding a protectible property interest in licenses that "are essential in the pursuit of a livelihood."  *See Bell v. Burson*, 402 U.S. 535, 539 (1971) (clergyman whose ministry required him to travel to several counties had essential need for driver's license).  *See also Barry v. Barchi*, 443 U.S. 55 (1979) (horse trainer's license constituted protectible property interest); *Richardson v. Town of Eastover*, 922 F.2d 1152, 1157 (4th Cir. 1991) (noting teacher certificate necessary for employment was protected property

interest (citing *Brown v. South Carolina State Bd. of Educ.*, 391 S.E.2d 866, 867 (S.C. 1990)). It is clear that Maryland statutes do not allow one to function as a law enforcement officer in the absence of police certification. Md. Code Ann., Pub. Safety § 3-217 (LexisNexis 2011). Thus, the Court concludes Durham has a protectible property interest in the certification of his police powers because it is essential in the pursuit of his livelihood as a law enforcement officer.

Having established that Durham's police certification is protected under the Fourteenth Amendment's due process clause, it is necessary to determine whether he has sufficiently stated a claim of denial of due process. As earlier noted, Durham's claim is based upon (1) the revocation of his certification without a hearing, (2) the commissioners' refusal to vacate their order of revocation, and (3) their refusal to grant certification without requiring Durham to go through the certification process. Each of these contentions will be examined in turn.

At points in Durham's complaint, he acknowledges that the revocation occurred automatically upon his termination of employment (Am. Compl. ¶¶ 14, 40), but at other times, he refers to the MPTC's revocation "order," suggesting it was an affirmative act by the MPTC (*id.* ¶¶ 15, 21, 40). Durham has not plausibly alleged that the MPTC voted to revoke his certification. Thus, the Court infers that the revocation occurred automatically when Durham's employment as a deputy sheriff in the SCSO terminated on September 16, 2009. This inference is supported by a Maryland Court of Appeals case, *Stanford v. Maryland Police Training & Corr'l Comm'n*, 697 A.2d 424 (Md. 1997). The *Stanford* court concluded that employment as a law enforcement officer is required for certification under the statutory scheme, *id.* at 429, and further concluded that a police officer certificate issued by the MPTC is automatically revoked upon the officer's termination of employment with a law enforcement unit, *id.* at 424. The revocation happens upon the individual's separation from his employment and not as a result of

9

MPTC action. *Id.* at 426. As a result, the Maryland statutory requirement of notice and hearing prior to the MPTC's revocation or suspension of an officer's certificate, Md. Code Ann., Pub. Safety § 2-212(b), does not apply in this situation but only in circumstances in which the MPTC takes affirmative action to revoke or suspend certification. *Id.* at 425-26, 432 (declining to reach Stanford's claim of denial of due process because his certification was revoked automatically).

Based upon the *Stanford* opinion, this Court concludes that revocation through operation of law, as happened here, does not require a hearing. Indeed, it would be at odds with the statutory scheme that clearly links certification to employment. The State of Maryland may reasonably claim a strong state interest in ensuring that those who are permitted to exercise police powers have met the standards for individuals entrusted with those powers. Concomitantly, it may be concluded that Maryland also has a corresponding interest in ensuring that those who are permitted by law to exercise police powers only do so within the context of employment in a law enforcement agency. The spectre of persons certified with police powers but operating outside of a law enforcement agency was specifically discredited by the *Stanford* opinion. *Id.* at 429-30 ("it seems contrary to sound public policy to permit an unemployed police officer to enforce the law in a vigilante-like manner"). Therefore, as to Durham's first contention, the Court concludes he has not stated a plausible claim of denial of due process based upon the revocation of his certification without a hearing.

Durham's second contention relating to due process is that the commissioners' refusal to vacate their order of revocation after his termination had been reversed on appeal constituted a denial of due process. It is again observed that the MPTC did not "order" Durham's revocation of certification. Thus, a nonexistent "order" could not have been vacated. A variation on this argument is that, because the termination was reversed and termination was the reason Durham's

police powers were revoked automatically, then reversal of the termination should have resulted in the automatic restoration of his police powers.  Durham's argued-for course of action is not entirely illogical, but it is not provided for in Maryland law.  The Court cannot create such a result outside of the Maryland statutory scheme pertaining to police certification.  Reversal of termination may lead to, but is not synonymous with, reinstatement to employment, which is necessary for certification.  Thus, mere reversal of termination cannot be, in itself, a basis for certification.  Reinstatement may trigger the certification process, but that fact relates to a separate, third contention of Durham.  As to his second contention, the Court cannot conclude that Durham's due process rights were violated by the commissioners' refusal to vacate a nonexistent revocation order or to restore summarily his police powers after his termination was reversed.

This brings the Court to Durham's third contention that he was denied due process by the MPTC's refusal to grant certification without requiring Durham to go through the certification process.  Based upon the Court's preceding analysis, this contention would only have merit once Durham was reemployed by the SCSO and not prior to that time, and analysis of the issue will be so limited.

Durham has attached to his opposition to the motions to dismiss a letter from Sheriff Jones to a Mr. Hayek, dated September 14, 2012, and the Court infers that Mr. Hayek was then employed by the MPTC.  (Pl.'s Opp'n Ex. 3.)  In the letter, Jones states he will be rehiring Durham on September 17, 2012, in a noncertified position "until he meets the requirements of the [MPTC]."  (*Id.*)  Further, Jones requested "the [MPTC] remove the red flag in Mr. Durham's file and reinstate him in good standing."  (*Id.*)  The letter was not attached to the complaint, but its contents are reflected in it.  (*See, e.g.*, Am. Compl. ¶¶ 12, 16, 20.)  Its authenticity has not

been challenged by Defendants who have discussed its contents in their reply. (State Defs.'
Reply 8, ECF No. 55.) The Court will consider it to have been incorporated into the complaint.
*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

The significance of the letter, at least in part, is that it establishes the date of
reinstatement as September 17, 2012. From that date forward, Durham's protectible interest in
his police certification was implicated. The question is whether he received due process between
Jones's request in September 2012 for Durham's certification to be reinstated in good standing
and the time he was recertified in December 2013. At the very least, the length of time
involved—fourteen months—raises a question of due process.

Although the statutes speak in terms of an individual's providing evidence for
certification to the MPTC and an officer's applying for recertification, Md. Code Ann., Pub.
Safety §§ 3-209, 3-210, the regulations adopted by the MPTC indicate that an application for
recertification must be submitted by the head of the particular law enforcement agency
employing the applicant, COMAR 12.04.01.08, rather than directly by the applicant. Such a
procedure, of course, is consistent with the intent of the Maryland legislature to link certification
to employment. A letter from Rapp at the MPTC to Durham's attorney, dated April 11, 2013,
indicated that the SCSO had submitted an incomplete application for certification and that, once
a "fully completed" application had been submitted, the MPTC would address it. (Compl.
Ex. 4.)

Durham alleges, "Many law enforcement officers have their termination orders reversed
[and, o]n occasion, and upon information and belief, the MPTC reinstates their law enforcement
certification with no further obligation, investigation or inspection of the officer." (*Id.* ¶ 32.)
The Court must accept this allegation as true in evaluating the motions to dismiss. Thus, one

may reasonably infer that, even though the statutory and regulatory framework provides a neutral, objective basis for recertification, if the MPTC members recertify some officers while waiving the rigors of the recertification process for them, but did not do so for Durham, then the process as it is actually implemented, regardless of what the statutes and regulations say, may be fundamentally unfair. This is, at minimum, a plausible claim of denial of due process.

The MPTC Defendants have relied upon the wording of the statute to the effect that the Commission "may recertify" an individual. (State Defs.' Mot. Supp. Mem. 18 (citing Md. Code Ann., Pub. Safety § 3-210(c).) They argue the MPTC has "complete discretion" whether to recertify. (*Id.*) To the extent that Defendants are suggesting they have unbounded, standardless discretion to decide whether to recertify, the Court is unconvinced this is so. The statutory and regulatory scheme sets forth clear standards for evaluating an application for certification, and the MPTC Defendants have posited no logical reason why a decision to recertify should not be made according to the same standards that govern a decision to certify. If the MPTC may truly deny recertification on a whim, then they have afforded an applicant for recertification no process whatsoever.

The Court concludes that Durham has adequately, but not overwhelmingly, stated a plausible claim of denial of due process. Defendants' motions to dismiss Count I will be denied.

### C. Sufficiency of Claim of First Amendment & Article 40 Retaliation against Rapp & Liebno – Count II

Durham asserts in Count II that Rapp and Liebno violated his "right to petition the Government for redress under the First Amendment of the U.S. Constitution, as well as under Maryland's Declaration of Rights, Article 40." (Am. Compl. ¶ 44.) The right asserted, "to petition the Government for redress," is not a part of Article 40, but Article 19 may be construed as providing a similar right under Maryland law. Regardless, the right may be analyzed similarly

under federal and Maryland law. *See Peroutka v. Streng*, 695 A.2d 1287, 1291 (Md. Ct. Spec. App. 1997).

Durham's second count is premised upon "his well-publicized appeal of his Trial Board termination, as well as [his] successful and publicized lawsuit against Sheriff Jones for First Amendment retaliation." (Am. Compl. ¶ 43.) He says that Rapp's and Liebno's course of conduct in responding to his requests for certification were in retaliation for these two legal proceedings, *Durham II* and *Durham I*, respectively.

A viable claim for First Amendment retaliation by a public official includes three elements: (1) the plaintiff engaged in activity protected under the First Amendment; (2) the defendant's alleged retaliatory action adversely affected the plaintiff's First Amendment activity; and (3) a causal relationship exists between the plaintiff's First Amendment activity and the defendant's retaliatory action. *See Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685-86 (4th Cir. 2000). "'The causation requirement is rigorous; it is not enough that the protected expression played a role or was a motivating factor in the retaliation; claimant must show that "but for" the protected expression the [government official] would not have taken the alleged retaliatory action.'" *Tobey v. Jones*, 706 F.3d 379, 390 (4th Cir. 2013) (alterations in original, citation omitted) (applying whistleblower causation standard to alleged retaliation in nonemployment context).

*Durham I* and *Durham II* may both be regarded as activities protected under the First Amendment; both may be seen as petitions to the government for redress of grievances. Although Defendants suggest that the lawsuits must involve matters of public concern (*see* State Defs.' Mot. Supp. Mem. 23), the Supreme Court has stated that requirement does not necessarily apply outside of the public employment context. *See Borough of Duryea, Pa. v. Guarnieri*, 131

14

S. Ct. 2488, 2498 (2011). This suit is not one against a public employer but instead is one directed at public officials' alleged reaction to Durham's legal proceedings that, in turn, are focused on public employment. Under *Guarnieri*'s rationale, the Court concludes the "matters of public concern" test does not apply to this case. Thus, Durham has adequately alleged the first element of First Amendment retaliation.

"A retaliation claim under 42 U.S.C. § 1983 must establish that the government responded to the plaintiff's constitutionally protected activity with conduct or speech that would chill or adversely affect his protected activity." *The Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006). This determination is an objective one, *i.e.*, "whether a similarly situated person of 'ordinary firmness' reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case." *Id.* Durham's case on Count II fails on this second element as well as the third element.

Durham alleges that in September 2009, Sheriff Jones advised the MPTC he had terminated Durham's employment and asked that the MPTC place a "red flag" on Durham's MPTC file. (Am. Compl. ¶ 16.) Further, Durham alleges that in communications between Durham and Rapp, the latter "candidly admitted and revealed the presence of the 'red flag,' when he stated that 'most likely that certification would not be granted to you by the Commissions until the Court cases (including any and all appeals have been resolved." (*Id.* ¶ 17 (citing Ex. 3 to the original complaint).)[5] In addition, Durham alleges that, prior to the August 2013 vote by the MPTC to deny a request for waiver of the recertification process, Liebno was told by Jones, and then Liebno relayed to the commissioners, that Durham "was

---

[5] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 8(c).

interfering with the Sheriff's ability to complete an application on behalf of the Plaintiff." (Am. Compl. ¶ 31.) According to Durham's complaint, these actions constituted retaliatory activity.

As to Rapp's "candid admission," the Court notes that the actual communication from Rapp to Durham does not say anything about a "red flag" or anything remotely resembling such. (Compl., Ex. 3.) The letter, dated February 3, 2011, noted receipt of a letter from Durham in which Durham had requested that the MPTC place some unidentified materials in his MPTC file. Rapp declined the request because the only materials in an individual's file are "based on official reporting from Maryland Police and Sheriff agencies in the form of personnel action reports," and he further noted that "individuals are not permitted to *personally* apply for certification"; thus, the MPTC does "not possess records sent to [it] by individuals." The specific portion of the letter with which Durham takes issue in relation to his First Amendment retaliation claim states,

> The additional information you provided regarding the appeal of your termination and its present status in the court system may impact your certification as well. Without knowing all of the facts, it is difficult to render any type of decision[;] however, it is most likely that certification would not be granted to you by the Commissions until the court cases (including any and all appeals) have been resolved. Further, as stated above and consistent with Maryland law, I, as the Executive Director of the MPCTC, am not in a position at this time to render a decision on this matter since a law enforcement agency has not submitted a request for your certification.

(*Id.*)

Rapp's letter simply states the obvious: that the MPTC can only act in response to a law enforcement agency's request for Durham to be recertified and that such a request—and, therefore, certification—is unlikely to be made until the status of his termination has been resolved. As noted earlier in relation to the due process claim, certification *must be linked* to employment, and Rapp's statements are consistent with that reality. It is implausible to construe Rapp's letter as retaliation for Durham's legal proceedings.

Liebno's alleged statement to the MPTC commissioners that, according to Jones, Durham was interfering with Jones's ability to complete an application for Durham's certification is assumed, for the purpose of evaluating the motions to dismiss, to have been made without a foundation in fact. The Court nevertheless concludes that it does not pass the objective test for whether it would chill someone from filing and pursuing those proceedings. Even if Durham's complaint satisfied the second element of First Amendment retaliation, Durham has failed to allege the necessary "but for" causation. Rather, Durham has only alleged "that a substantial and motivating factor exists between [his] right to seek redress of grievances as to matters of public concern and the unlawful denial of full and unconditional reinstatement of [his] law enforcement powers." (Am. Compl. ¶ 43.) Even without an explicit allegation of "but for" causation, the complaint does not allow a reasonable inference that Liebno's comment to the MPTC was directly caused by Durham's lawsuits.

Count II will be dismissed. Because this is the only count against Rapp and Liebno, they will be dismissed from the case.

### D. Sufficiency of Claim of First Amendment Retaliation against MPTC Commissioners

Durham's third and final count alleges that the commissioners refused in August 2013 to grant Jones's request for a waiver of recertification on Durham's behalf and that the refusal was "based on the filing of this lawsuit against [them]." (Am. Compl. ¶ 46.) The plausibility of this allegation depends on the relative closeness in time between the lawsuit's filing in May 2013 and the MPTC's negative action a mere three months later. This is analogous to precedent in employment retaliation cases finding a *prima facie* case on the element of causation based on the rather short time interval between the protected activity and an adverse employment action. *See Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (noting four-month period in *Williams v.*

17

*Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989), between protected activity and adverse employment action was found to constitute a causal nexus). This inference is strengthened by Durham's allegations that the MPTC routinely granted waivers to others. (Am. Compl. ¶ 46.) For now, this count survives.

### E. *Qualified Immunity for Federal Claims*

The MPTC commissioners argue they have qualified immunity on Durham's federal claims. Qualified immunity provides immunity from suit, not merely a defense to liability. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009). Consequently, resolution of this issue should be made "'at the earliest possible stage in litigation.'" *Id.* at 232 (citation omitted). Qualified immunity turns on two inquiries: (1) "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* A defendant is entitled to qualified immunity "unless the official's conduct violated a clearly established constitutional right." *Id.* Although it is often beneficial to address the first inquiry initially and then to address the second inquiry, courts may exercise their sound discretion in deciding which of these questions to address first. *Id.* at 236.

This Court has already determined that Durham has plausibly alleged violations of his constitutional rights of procedural due process and freedom from retaliation for exercising his First Amendment right to petition the government for redress. Thus, the pertinent inquiry is whether these rights were clearly established in relation to Durham's efforts to be recertified by the MPTC.

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of

18

the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citations omitted). To be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 640. The right claimed by a plaintiff to have been violated "must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999).

In Count I, alleging a denial of procedural due process, Durham's right to be considered with neutral fairness for recertification is at issue. That government officials are barred from arbitrary action by the due process clause is well established. The Supreme Court has "emphasized time and again that '[t]he touchstone of due process is protection of the individual against arbitrary action of government.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (alteration in original) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)). Durham's right to be fairly considered for a waiver of recertification by the MPTC, and not to be arbitrarily denied one, was clearly established at the time of the commissioners' decision to deny a waiver of the recertification process. As to Count I, the MPTC commissioners are not entitled to qualified immunity on Durham's federal claim.

In Count III, alleging retaliation for Durham's petitioning the government for redress of grievances, the question is whether Durham had a right to be considered for a waiver of recertification without the MPTC commissioners taking into account his filing of this lawsuit against him. "Because government retaliation tends to chill an individual's exercise of his First

Amendment rights, public officials may not, as a general rule, respond to an individual's protected activity with conduct or speech even though that conduct or speech would otherwise be a lawful exercise of public authority." *Baltimore Sun*, 437 F.3d at 415. Applying that general rule, the Court concludes that the MPTC commissioners' alleged denial of the waiver requests based upon Durham's various legal filings, including the suit against the commissioners, violated a clearly established right. *See also Andrew v. Clark*, 561 F.3d 261, 269 (4th Cir. 2009) (termination of employment for threatening to file suit for instigation of internal affairs investigation that, in turn, was retaliation for First Amendment activity; complaint thusly stated two separate claims of First Amendment retaliation). Consequently, the MPTC Defendants are not entitled to qualified immunity on Durham's federal claim in Count III.

### F. Statutory Immunity on State Law Claims

Defendants' last argument is that they are entitled to statutory immunity on Durham's state law claims. Since Rapp and Liebno are otherwise being dismissed from the case, this argument will only be considered in relation to the MPTC commissioners.

Members of a Maryland state commission are considered to be "state personnel" within the meaning of the Maryland Tort Claims Act. Md. Code Ann., State Gov't § 12-101(a)(3)(i) (LexisNexis 2014). They are, therefore, immune from suit for tortious liability for an act or omission within the scope of their public duties when such act or omission is made without malice or gross negligence. Md. Code Ann., State Gov't § 12-105; Cts. & Jud. Proc. § 5-522(b) (LexisNexis 2013). Defendants have faulted the specificity of Durham's allegations of malice and have relied upon Maryland case law stating that a "'plaintiff must allege with some clarity and precision those facts which make the act malicious.'" (State Defs.' Mot. Supp. Mem. 31; *see also* Vogt Mot. Supp. Mem. 14.) However, in matters of pleading, federal courts are governed

by the Federal Rules of Civil Procedure, not by state practice. *Swift & Co. v. Young*, 107 F.2d 170, 172 (4th Cir. 1939). *See also McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 328 (4th Cir 1996) (sufficiency of pleadings is procedural matter to which federal law applies); *Heinrich v. Goodyear Tire and Rubber Co.*, 532 F. Supp. 1348, 1358 (D. Md. 1982) (degree of pleading specificity required as to elements of state law claim is matter of federal procedure); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1204 (3d ed. 2004 & Supp. 2014) ("a federal pleading that satisfies the Rule 8(a) standard will not be dismissed simply because it would be vulnerable to a demurrer or a motion to dismiss in a forum state court").

In contrast to the Maryland state court standard for pleading malice, Federal Rule of Civil Procedure 9(b) allows malice to be alleged generally. This Durham has done, although he has also included other allegations from which one may reasonably, though perhaps not strongly, infer malice, *e.g.*, paragraphs 37, 43, and 47 of the amended complaint (ECF No. 46). Under federal pleading rules, Durham has sufficiently alleged the element of malice to overcome the MPTC Defendants' assertion of statutory immunity to Durham's state law claims.

One other contention is deserving of the Court's attention. The MPTC commissioners have faulted Durham's complaint because he does not make allegations against each one of them, but his causes of action are based upon the commissioners acting together to make decisions. No commissioner seems to have a special power that the other commissioners do not have. It is appropriate in this context to make allegations against the commissioners without referring to each of them by name.

## IV. Conclusion

Durham has sufficiently stated a claim of denial of due process against the MPTC commissioners in Count 1. Count II fails to state a claim for relief against Rapp and Liebno.

21

Count III presents a plausible claim for relief for First Amendment retaliation. Defendants are not entitled to qualified immunity to the federal claims or statutory immunity to the state claims. A separate order will issue.

DATED this ___9___ day of December, 2014.

BY THE COURT:

James K. Bredar
United States District Judge